STATE of Iowa, Appellee,

v.

Kenneth Raymond McKETTRICK, Appellant.

No. 90–1836.

Supreme Court of Iowa.

Jan. 22, 1992.

Linda Del Gallo, State Appellate Defender, and B. John Burns, Asst. Appellate Defender, for appellant.

Bonnie J. Campbell, Atty. Gen., and Richard J. Bennett and Robert J. Glaser, Asst. Attys. Gen., for appellee.

Considered by McGIVERIN, C.J., and LARSON, SCHULTZ, SNELL, and ANDREASEN, JJ.

McGIVERIN, Chief Justice.

Defendant Kenneth Raymond McKettrick appeals from the judgment and sentence entered by the district court after his conviction by a jury of assault with intent to commit serious injury, Iowa Code sections 708.1 and 708.2(1) (1989), assault causing bodily injury, Iowa Code sections 708.1 and 708.2(2), and escape, Iowa Code section 719.4(3). On this appeal, McKettrick contends that he was denied effective assistance of counsel because of his trial attorney's failure to object, on double jeopardy grounds, to McKettrick's prosecution and conviction of both assault with intent to commit serious injury and assault causing bodily injury. He also contends that his trial attorney rendered ineffective assistance in several other respects.

■ Because claims of ineffective assistance of counsel are more properly considered in postconviction relief proceedings where an evidentiary record can be developed on the circumstances surrounding counsel's performance, *Washington v. Scurr*, 304 N.W.2d 231, 235 (Iowa 1981), we affirm the judgment of the district court but preserve some of McKettrick's claims in the event that he chooses to file

an application for postconviction relief. *Cf. State v. White*, 337 N.W.2d 517, 519–20 (Iowa 1983); Iowa Code § 663A.3.

I. *Background facts and proceedings.* From the evidence presented at trial, a jury could have found the following facts. Defendant McKettrick is an inmate at the Iowa State Penitentiary at Fort Madison. On May 10, 1990, McKettrick and inmates Luke Martin, Jr. and Ronald Mahers were in an outdoor exercise pen inside the prison walls. Inmate John Harvey was in an adjacent exercise pen. A chain-linked fence separated the two pens. McKettrick, Martin, and Mahers lifted the fence separating the two pens, entered Harvey's exercise pen, and proceeded to assault Harvey by repeatedly beating and kicking him.

Two correctional officers observed McKettrick, Martin, and Mahers beating inmate Harvey. McKettrick, along with the others, continued to beat Harvey even after the officers ordered them to stop. Once the officers entered Harvey's exercise pen, they had to restrain McKettrick and the others to get them to stop beating Harvey.

Thereafter, McKettrick, Martin, and Mahers, were charged by trial information with one count of assault with intent to commit serious injury, one count of assault causing bodily injury, and one count of escape. *See* Iowa Code §§ 708.1, 708.2(1), 708.2(2), 719.4(3).

Prior to trial, inmate Mahers pled guilty to assault causing bodily injury. *See* Iowa Code §§ 708.1, 708.2(2). At the joint criminal jury trial of McKettrick and Martin, Mahers testified for the defense that he had entered Harvey's exercise pen "to do as much damage to [Harvey] as [he] could," but that McKettrick and Martin had entered the pen solely to stop Mahers from killing Harvey. Several other inmates testified that McKettrick and Martin were merely trying to stop Mahers from assaulting Harvey. McKettrick and Martin did not testify.

The jury found McKettrick and Martin guilty on all three counts. The district court later sentenced McKettrick to a term of incarceration not to exceed two years on his conviction for assault with intent to commit serious injury. *See* Iowa Code §§ 708.2(1), 903.1(2). The court also sentenced McKettrick to a term of incarceration not to exceed one year on each of his convictions for assault causing bodily injury, and for escape. *See* Iowa Code §§ 708.-2(2), 719.4(3), 903.1(1)(b). The sentences were to run consecutively. *See* Iowa Code § 901.8. The result was a total indeterminate sentence of not more than four years to begin at the expiration of the sentence McKettrick was then serving.[1]

McKettrick has appealed, contending that he was denied effective assistance of trial counsel. None of the contentions raised on this appeal were presented to or considered by the trial court. Our review is de novo. *Hinkle v. State*, 290 N.W.2d 28, 30 (Iowa 1980).

II. *Claims of ineffective assistance of counsel.* In order for a defendant such as McKettrick to establish a claim of ineffective assistance of trial counsel, we have indicated that he must show: (1) that counsel's performance fell outside a normal range of competency; and (2) that the deficient performance so prejudiced the defendant as to give rise to a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. U.S. Const. amend. VI; *Kane v. State*, 436 N.W.2d 624, 627 (Iowa 1989); *State v. Losee*, 354 N.W.2d 239, 243 (Iowa 1984); *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984). Representation by counsel is presumed competent, and a defendant has the burden to prove by a preponderance of the evidence that counsel was ineffective. *Kane*, 436 N.W.2d at 627. Improvident trial strategy, miscalculated tactics, and mistakes in judgment do not necessarily amount to ineffective assistance of counsel. *Id.; Hinkle*, 290 N.W.2d at 34.

---

**1.** McKettrick is serving a life-sentence for first-degree murder resulting from a separate inci-dent. *See* Iowa Code §§ 707.1, 707.2, 902.1.

■ Claims of ineffective assistance of counsel usually are not adjudicated on direct appeal because the attorney charged with ineffectiveness has not had an opportunity to respond to the allegations. *See, e.g., State v. Poyner,* 306 N.W.2d 716, 719 (Iowa 1981); *State v. Coil,* 264 N.W.2d 293, 296 (Iowa 1978). We usually preserve such claims for postconviction relief proceedings where an evidentiary record may be developed and a hearing held on counsel's alleged errors. *See, e.g., State v. Allen,* 348 N.W.2d 243, 248 (Iowa 1984). However, such claims may be adjudicated on direct appeal if there is a sufficient record available for a reviewing court to make a determination. *See id; White,* 337 N.W.2d at 519. Because a defendant must prove *both* incompetent representation *and* prejudice before succeeding on a claim of ineffective assistance of counsel, a reviewing court can affirm a conviction on direct appeal if the defendant has failed to prove prejudice, without deciding whether counsel's representation was incompetent. *See Taylor v. State,* 352 N.W.2d 683, 685 (Iowa 1984).

■ A. *Claim of double jeopardy.* McKettrick now contends that he was denied effective assistance of counsel because of his trial attorney's failure to object, on double jeopardy grounds, to McKettrick's prosecution and conviction of both assault with intent to commit serious injury, Iowa Code section 708.2(1), and assault causing bodily injury, Iowa Code section 708.2(2). Although we preserve this claim for a possible postconviction relief proceeding, we recognize that it involves a novel and substantial question of constitutional law and conclude that a criminal defendant such as McKettrick may not be convicted of both sections 708.2(1) and 708.2(2) for a single assault.

■ 1. The fifth amendment to the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. This clause provides three related protections, namely, protection against: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 664–65 (1969); *see also State v. Carlberg,* 375 N.W.2d 275, 276 (Iowa App.1985). These protections are enforceable against the states through the fourteenth amendment to the United States Constitution. *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). Because McKettrick was convicted of two offenses for a single criminal act, he is concerned in this appeal with the protection against multiple punishments for the same offense.[2]

Iowa Code section 708.2(1), which defines the crime of assault with intent to commit serious injury, provides, in part, as follows:

A person who commits an assault, ... *with the intent to inflict a serious injury upon another,* is guilty of an aggravated misdemeanor.

(Emphasis supplied.) Iowa Code section 708.2(2), which defines the crime of assault causing bodily injury, provides, in part, as follows:

A person who commits an assault, ... *without the intent to inflict a serious injury upon another,* and who causes bodily injury or disabling mental illness, is guilty of a serious misdemeanor.

(Emphasis supplied.)

The language of these provisions raises a question of first impression as to whether a criminal defendant can be convicted of both

**2.** Based upon the fact that inmate Harvey received multiple kicks and blows from inmates McKettrick, Martin, and Mahers, a trier of fact may conclude that Harvey was the victim of a *series* of assaults. Such a finding may of course support a conviction of both assault with intent to commit serious injury and assault causing bodily injury. *See State v. Delap,* 466 N.W.2d 264 (Iowa App.1990) (defendant could receive cumulative punishments for violations of both sections 708.2(1) and 708.2(2) where defendant had committed a *series* of assaults). However, the jury in this case presumably did not find that a series of assaults occurred: the State, at all times during McKettrick's trial and in its brief on this appeal, characterized the incident as a *single* assault.

crimes based on a single assault. McKettrick contends that it is logically and factually impossible for an alleged assailant to commit a single assault both *with* the intent to inflict a serious injury and *without* the intent to inflict a serious injury. We agree.

2. In considering a double jeopardy claim within the multiple punishments context, we are guided by the general principle that the question of what punishments are constitutionally permissible is no different from the question of what punishments the legislature intended to be imposed. *Jones v. Thomas*, 491 U.S. 376, 381, 109 S.Ct. 2522, 2525, 105 L.Ed.2d 322, 331 (1989), *reh. den.*, 492 U.S. 932, 110 S.Ct. 12, 106 L.Ed.2d 627; *United States v. Halper*, 490 U.S. 435, 450, 109 S.Ct. 1892, 1903, 104 L.Ed.2d 487, 503 (1989); *Ohio v. Johnson*, 467 U.S. 493, 499, 104 S.Ct. 2536, 2540–541, 81 L.Ed.2d 425, 433 (1984), *reh. den.*, 468 U.S. 1224, 105 S.Ct. 20, 82 L.Ed.2d 915 *Missouri v. Hunter*, 459 U.S. 359, 368, 103 S.Ct. 673, 679, 74 L.Ed.2d 535, 543 (1983); *Albernaz v. United States*, 450 U.S. 333, 344, 101 S.Ct. 1137, 1145, 67 L.Ed.2d 275, 285 (1981). The question of whether the legislature intended that a criminal defendant may be cumulatively punished based upon a single incident usually is resolved by reference to the rule of statutory construction enunciated in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932):

> [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not.

We have followed the *Blockburger* rule in making our own determinations of whether a criminal defendant's sentence for multiple offenses violates double jeopardy. *See, e.g., State v. Clarke*, 475 N.W.2d 193, 194 (Iowa 1991). More specifically, we have held that if a requisite element of one offense is not necessarily essential to conviction of another offense, then no double jeopardy claim is present.

*Schrier v. State*, 347 N.W.2d 657, 667 (Iowa 1984); *State v. O'Kelly*, 211 N.W.2d 589, 593 (Iowa 1973) *cert. den.* 417 U.S. 936, 94 S.Ct. 2652, 41 L.Ed.2d 240 (1974) (citing *Blockburger* ). For example, if, after an examination of the statutory elements of two offenses, one offense is not a lesser-included offense of the other, a criminal defendant's conviction of and sentence for each offense would not violate the double jeopardy clause. *See, e.g., State v. Jeffries*, 430 N.W.2d 728, 734–35 (Iowa 1988); *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). *Accord Schmuck v. United States*, 489 U.S. 705, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989), *reh. den.*, 490 U.S. 1076, 109 S.Ct. 2091, 104 L.Ed.2d 654; *Illinois v. Vitale*, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980). In such a case, the offenses are not the "same" because "each provision requires proof of an additional fact which the other does not." Cumulative punishments can presumptively be assessed after conviction of two offenses that are not the "same" under this rule. *Hunter*, 459 U.S. at 367, 103 S.Ct. at 679, 74 L.Ed.2d at 543.

3. Our court of appeals has held that the crime of assault causing bodily injury is *not* a lesser-included offense of assault with intent to commit serious injury. *State v. Swanson*, 423 N.W.2d 560 (Iowa App.1988) (crime of assault causing bodily injury contains an element not required for assault with intent to commit serious injury; thus, former cannot be included within the latter). Thus, sections 708.2(1) and 708.2(2) do not proscribe the "same offense" because each provision requires proof of a fact which the other does not. *Cf. Whalen v. United States*, 445 U.S. 684, 692, 100 S.Ct. 1432, 1438, 63 L.Ed.2d 715, 724 (1980); *Hunter*, 459 U.S. at 367, 103 S.Ct. at 678, 74 L.Ed.2d at 543; *Albernaz*, 450 U.S. at 339, 101 S.Ct. at 1142, 67 L.Ed.2d at 281; *Brown*, 432 U.S. at 166, 97 S.Ct. at 2225, 53 L.Ed.2d at 194. Because multiple punishments can presumptively be assessed after conviction of two offenses that are not the "same" under *Blockburger, Hunter*, 459 U.S. at 367, 103 S.Ct. at 679, 74 L.Ed.2d at 543, there is a

presumption that McKettrick can receive multiple punishments based on his convictions of both assault with intent to commit serious injury and assault causing bodily injury.

4. Satisfaction of the *Blockburger* presumption, however, is not alone dispositive in determining whether the legislature intended that a criminal defendant may receive multiple punishments for a single criminal act. This is because the *Blockburger* test is merely a rule of statutory construction. Because this test serves merely as a means of discerning legislative intent, "the rule should not be controlling where, for example, there is a clear indication of contrary legislative intent." *Hunter,* 459 U.S. at 367, 103 S.Ct. at 678–79, 74 L.Ed.2d at 543; *Albernaz,* 450 U.S. at 340, 101 S.Ct. at 1143, 67 L.Ed.2d at 282; *see also Garrett v. United States,* 471 U.S. 773, 778–79, 105 S.Ct. 2407, 2411, 85 L.Ed.2d 764, 771–72 (1985), *reh. den.* 473 U.S. 927, 106 S.Ct. 20, 87 L.Ed.2d 698; *Whalen,* 445 U.S. at 691–92, 100 S.Ct. at 1438, 63 L.Ed.2d at 723–24.

McKettrick contends that there is a "clear indication" of legislative intent that a defendant such as himself not be convicted of both assault with intent to commit serious injury and assault causing bodily injury. He argues, based upon the plain language of the statutes, that it is impossible for an alleged assailant to commit a single assault both *with* the intent to inflict a serious injury and *without* the intent to inflict a serious injury. *Cf. Delap,* 466 N.W.2d at 264 (defendant could be convicted under both sections 708.2(1) and 708.2(2) where defendant had committed a series of assaults).

We agree with this argument and conclude that a criminal defendant such as McKettrick, who has committed a single assault, may not be convicted of, and receive multiple punishment for, both assault with intent to commit serious injury and assault causing bodily injury.

■ We note, however, that we have never had previous occasion to rule on this issue. We therefore cannot say, based upon the lack of record before us, that the failure of McKettrick's trial attorney to raise this novel objection amounted to ineffective assistance of counsel. *Accord, Jasper v. State,* 477 N.W.2d 852, 858 (Iowa 1991) (it is not necessary that counsel know what the law may become in the future in order to provide effective assistance); *Snethen v. State,* 308 N.W.2d 11, 16 (Iowa 1981).

■ We also note that Iowa's uniform criminal jury instructions, upon which the district court based its instructions to McKettrick's criminal trial jury, do not correctly state the elements of assault causing bodily injury as outlined in Iowa Code section 708.2(2). *See* 1 Iowa Crim. Jury Instr. 800.4. Section 708.2(2) provides that one is guilty of a serious misdemeanor if he commits an assault, *without the intent to inflict a serious injury,* which causes bodily injury. The uniform instruction, however, omits any reference to the element "without the intent to inflict a serious injury." Based upon this erroneous omission, a jury could find a defendant guilty of *both* assault causing bodily injury *and* assault *with intent to inflict serious injury.* Iowa Code § 708.2(1). Such a verdict, based upon an erroneous instruction, is contrary to the specific requirement of section 708.2(2).

Because of this conflict between section 708.2(2) and the erroneous uniform instruction for assault causing bodily injury, we cannot say, based upon the lack of record before us, that McKettrick's trial attorney rendered ineffective assistance because of his failure to object to McKettrick's conviction and sentence under both sections 708.-2(1) and 708.2(2).

For these reasons, we preserve McKettrick's claim of ineffective assistance of counsel on this point for a possible postconviction relief proceeding. *See White,* 337 N.W.2d at 519–20.

■ B. *Reference to victim's religious background.* During the State's direct examination of inmate Harvey, the prosecutor elicited from Harvey the fact that he was a religious person who occasionally would "preach the gospel around

the cellhouse." On this appeal, McKettrick contends that he was prejudiced by his trial attorney's failure to object to admission of this evidence.

We have previously stated that, "in the phase of a criminal prosecution where the issue is the determination of guilt, this type of [biographical] evidence should be received sparingly unless the victim's character is relevant to a particular issue in dispute." *State v. Broughton,* 450 N.W.2d 874, 877 (Iowa 1990). Although we believe that this reference to Harvey's religious background was not relevant to any particular issue in dispute, we nevertheless do not find sufficient prejudice in this rather innocuous information to warrant a reversal of McKettrick's conviction. *Id.* at 876. We therefore hold that the failure of McKettrick's trial attorney to object to this information did not constitute ineffective assistance.

 C. *Claimed improper impeachment of defense witnesses.* The State began its cross-examination of defense witnesses, inmates Michael Lang and Everett Wagner, by eliciting the facts that Lang had been convicted of kidnapping, and that Wagner had been convicted of kidnapping, insurrection, burglary, and malicious injury. Defendant's attorney did not object to this testimony. McKettrick now contends that admission of this testimony violated Iowa Rule of Evidence 609(a) because this rule permits impeachment by evidence of conviction of a crime only where the crime is a felony involving dishonesty or false statement. He argues that, because the offenses of kidnapping, insurrection, and malicious injury are not crimes involving dishonesty or false statement, his trial attorney rendered ineffective assistance by his failure to object to this testimony.

The only crime of which Lang and Wagner were convicted which we have recognized as involving "dishonesty or false statement" is Wagner's conviction of burglary. *See, e.g., State v. Conner,* 241 N.W.2d 447, 455 (Iowa 1976). We therefore agree with McKettrick that the prosecutor's reference to the other convictions of

Lang and Wagner was contrary to the strictures of rule 609(a). Although we question whether the failure of McKettrick's attorney to object to admission of this testimony so prejudiced McKettrick as to give rise to a reasonable probability that the result of the proceedings would have been different, *Kane,* 436 N.W.2d at 627, we nevertheless preserve McKettrick's claim for a possible postconviction relief proceeding in order to afford McKettrick's attorney an opportunity to respond to the allegation.

D. *Admission of inspection report.* At trial, McKettrick's attorney presented the testimony of several prison inmates. These inmates testified that McKettrick and Martin did not participate with Mahers in assaulting Harvey, stating that they had observed McKettrick and Martin attempting to prevent Mahers from beating and kicking Harvey. Most of these witnesses were in Cellhouse 220 when the assault occurred.

 The State responded to these witnesses with the rebuttal testimony of Karl Kemp, administrator of house services at the penitentiary. The State questioned Kemp about an annual inspection report prepared by court monitor expert John Raba. Kemp read into evidence Raba's report, which contained the following observations Raba had made concerning Cellhouse 220:

I continue to be significantly concerned about the plexiglass covered cells in the 220 Unit. I experienced an unacceptable degree of difficulty in visualizing and communicating with the men housed in these cells. It is impossible for health providers to adequately triage an inmate's complaints through the plexiglass covered doors. Given that men may be on this Unit for lengthy durations, I feel that these cells constitute a definite degree of sensory deprivation which could result in an individual's mental and physical deterioration.

Presumably, the State submitted this evidence to demonstrate that it would have been difficult for the inmates in Cellhouse 220 to observe the assault. Defendant's

trial attorney made no objection to this evidence.

On this appeal, McKettrick contends that the contents of this report constituted inadmissible hearsay because they contained statements, "other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Iowa R.Evid. 801(c), 802. He also contends that the contents of the report were not admissible in evidence under the "business records exception" to the rule against hearsay, Iowa Rule of Evidence 803(6), nor under the "public records exception," Iowa Rule of Evidence 803(8). He argues that his trial attorney's failure to object to admission of the contents of this report was ineffective assistance.

We agree with McKettrick that the contents of Raba's report constituted hearsay. Iowa R.Evid. 801(c). We also agree that the report was not admissible under either the "business records exception" or the "public records exception" to the rule against hearsay. Iowa R.Evid. 803(6), 803(8). However, because we do not believe McKettrick was in any way prejudiced by admission of the report, we dispose of his present claim of ineffective assistance of counsel on this direct appeal.

■ The general rule is that error in the admission of hearsay is presumed prejudicial unless the contrary is affirmatively established. *State v. Farris*, 359 N.W.2d 190, 193 (Iowa 1984); *State v. Nims*, 357 N.W.2d 608, 609 (Iowa 1984); *State v. Judkins*, 242 N.W.2d 266, 268 (Iowa 1976). We have stated, however, that prejudice will not be found where substantially the same evidence is in the record without objection. *Farris*, 359 N.W.2d at 193.

■ In the present case, substantially the same evidence as was contained in Raba's report was admitted in the record, without objection, through the testimony of the penitentiary's electronics engineering technician, David Nickell. Nickell testified in great detail about the opaque nature of the plexiglass in Cellhouse 220, outlining how the view of the exercise pens from that cellhouse is obstructed by numerous

obstacles, including two sets of expanded metal screenwork, a set of prison bars, and two cyclone fences. He opined that it would be difficult to observe the exercise pens, and that he would not have been able to positively identify persons in the those pens.

Based upon the foregoing, we conclude that McKettrick was not prejudiced by the erroneous admission of Raba's report because substantially the same evidence was admitted, without objection, by the testimony of David Nickell. Accordingly, we hold that McKettrick was not denied effective assistance of counsel due to his trial attorney's failure to object to admission of the hearsay report.

■ *E. Reference to prison disciplinary report.* As stated above, at the joint criminal trial of defendants McKettrick and Martin, McKettrick called as defense witnesses several prison inmates who testified that they saw the assault and that defendant and Martin entered the exercise pen to attempt to stop Maher from beating Harvey. They further stated that defendant and Martin did not strike Harvey.

As a rebuttal witness, the State called Reuben Baker, a prison employee who investigates and writes reports on prison discipline incidents. He prepared a report concerning the May 10, 1990, altercation for the purposes of separate prison disciplinary proceedings instituted against McKettrick and Martin. Part of the procedure was to ask alleged participants whether they desired Baker to interview any particular witnesses as a part of his investigation.

In that context, during the State's direct examination of Baker at the criminal trial, the following exchange occurred:

Q: Did McKettrick ask for any witnesses of any sort in that particular disciplinary report?

A: According to this report here on 5-14-90, at the time that I approached McKettrick for his statement he stated that he did not have any comments to make concerning the report.

Presumably, the purpose of the State's question was to determine whether McKettrick asked for the same witnesses to be interviewed for his prison disciplinary proceeding as were produced as defense witnesses at his criminal trial.

On this appeal, McKettrick contends that the quoted exchange violated his privilege against self-incrimination guaranteed him by the fifth amendment to the United States Constitution. *See* U.S. Const. amend. V. More specifically, McKettrick characterizes this exchange as a prosecution comment on McKettrick's alleged refusal to testify at his prison disciplinary proceeding. *See Griffin v. California*, 380 U.S. 609, 615, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106, 110 (1965), *reh. den.*, 381 U.S. 957, 85 S.Ct. 1797, 14 L.Ed.2d 730. He further says that his trial attorney's failure to object to the question was ineffective assistance of counsel.

Given the context in which the State's question was asked, we do not believe the question and answer were an impermissible comment on McKettrick's alleged refusal to testify in any proceeding. *See State v. Bishop*, 387 N.W.2d 554, 563 (Iowa 1986). The substance of the evidence was merely that McKettrick had no comment to make to Baker concerning witnesses to be interviewed by Baker for the prison disciplinary investigation. Accordingly, we do not believe McKettrick was prejudiced by the testimony. *See Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 710–11 (1967), *reh. den.*, 386 U.S. 987, 87 S.Ct. 1283, 18 L.Ed.2d 241.

Without unduly extending this opinion, we conclude that there is no merit in this assignment of error by McKettrick. His attorney's failure to object to the challenged evidence therefore was not ineffective assistance of counsel.

III. *Disposition.* For the foregoing reasons, we preserve for a possible postconviction relief proceeding McKettrick's claim that he received ineffective assistance of counsel because of his trial attorney's failure to object, on double jeopardy grounds, to his convictions of both assault with intent to commit serious injury and assault causing bodily injury. The same is true for his claim of ineffective assistance due to his trial attorney's failure to object to the alleged improper impeachment of defense witnesses Lang and Wagner. Because we find no prejudice as to McKettrick's other assignments of error, we do not preserve them for a possible postconviction relief proceeding.

For the foregoing reasons, we affirm the judgment and sentence of the district court.

AFFIRMED.